SMITH vs. SMITH, imp.

*March 24 — April 8, 1884.*

60 329|
74 367|
60 329|
102 68|

EQUITY: EVIDENCE. *(1, 2) Mental incapacity: undue influence: degree of proof. (3) Case stated: burden of proof.*

1. Mental incapacity and undue influence in the case of a feeble man ninety years old, may be established by a less degree of proof than in the case of a younger person.

2. A court of equity scans with great jealousy transactions in which there are grounds for holding that influence has been acquired and abused, or where confidence has been reposed and betrayed.

3. A feeble man more than ninety years of age deeded property to the defendant, his son-in-law, without reading the instrument or knowing its contents, and four months later deeded the same property to the plaintiff, his grandson and only heir. The grantor had previously executed a deed of the property to the defendant with a trust in plaintiff's favor, but had retained such deed and destroyed it. The evidence is *held* to justify a finding that the grantor was induced by the defendant to believe that the deed first mentioned was executory and not absolute, and was for the benefit of the plaintiff. The burden of showing the fairness of the transaction and the capacity of the grantor was upon the defendant.

APPEAL from the Circuit Court for *Walworth* County.

On April 23, 1878, Benjamin Holmes, being then more than ninety years of age, deeded to the defendant *Charles W. Smith,* his son-in-law, certain real estate in the village of Geneva; and on August 20, 1878, the same grantor executed a deed of the same land to the plaintiff, his only grandson and a son of said defendant. The second deed was deposited with one Harry Smith for delivery to the plaintiff after the grantor's death. Mr. Holmes died soon after, and the second deed was delivered to the plaintiff, who, discovering the former deed on record, brought this action against *Charles W. Smith* and his second wife (not the plaintiff's mother) to have it set aside on the ground that the grantor did not understand or know its contents, and that it was obtained from him fraudulently and without consideration and con-

trary to his intention that the property should at his death belong to the plaintiff.

Other facts will sufficiently appear from the opinion. From a judgment in favor of the plaintiff the defendant *Charles W. Smith* appealed.

For the appellant, there was a brief by *Chas. S. French* and *Fish & Dodge*, and oral argument by *Mr. Fish.*

*J. V. Quarles*, of counsel, for the respondent.

COLE, C. J.    In the first place, it is well to refer to the rule of practice firmly established by this court, that it will not reverse the findings of the trial court upon questions of fact, unless it appears that such findings are against the weight of testimony.    This rule must have its due influence in the decision of this cause, especially in view of the great conflict in the testimony.    It cannot be denied that Mr. Holmes — the common grantor — was over ninety years of age when he executed the deed bearing date April 23, 1878. The defendant, in his sworn answer, alleges that when Mr. Holmes executed the deed to the plaintiff of August 20, 1878, he was "old, infirm, of unsound mind and memory, and was overpersuaded by the importunities and promises of the plaintiff and of Harry Smith" to make that conveyance, having forgotten what he had done in regard to the title of the property prior thereto.    But this was only four months after the conveyance under which the defendant claims the property, and there is nothing to show that there had been any change in Mr. Holmes's physical or mental condition in the mean time.    We could well understand, without such an averment or proof to support it, that Mr. Holmes must have felt, for a considerable period, the weakness of body and mind incident to great age; that his faculties might be so impaired that he could not readily comprehend the nature and effect of contracts, nor remember ordinary business matters which he had transacted, and that he would be

more easily influenced by another, and more likely be imposed upon, than one in the vigor of manhood. All this is so natural and probable that we would not require these facts to be established by that clear proof which is demanded to show mental incapacity in younger persons. Of course a less degree of proof also would satisfy us that a man over ninety years of age might easily have been influenced by one standing in a confidential relation to him as the defendant did.

These general remarks are made in view of some of the findings of fact, which it is claimed are not fully sustained by the evidence. Now, in respect to these findings, it is admitted that the plaintiff is the grandson and only heir of Mr. Holmes. The circuit court found that prior to the execution of the deed of August 20, 1878, and on or about the 23d of April, 1878, Mr. Holmes was induced by the defendant to make a conveyance of the property in question to him; that at the time of the execution of that deed Mr. Holmes did not, and could not, read it; that it was not read or explained to him; that he did not know or understand its import; that he executed it under a misapprehension of its contents, believing it to be in some way for the benefit of the plaintiff; that there was no consideration for the deed, and that it was obtained through fraud or imposition practiced upon Mr. Holmes by the defendant. It seems to us that there is ample evidence to sustain this finding in every particular, except as to actual fraud practiced by the defendant in obtaining the deed. We would be unwilling to say, upon the proofs, that the defendant was guilty of a premeditated fraud in procuring that conveyance, or that he used any active means to deceive Mr. Holmes in regard to it, though he might have exercised such a degree of influence to induce Mr. Holmes to make the conveyance as amounts in law to a species of fraud. It is certainly very

doubtful if Mr. Holmes did or could read that deed, or even understood its import, when he executed it. This point is left in so much doubt and uncertainty that we cannot say that the court below found erroneously upon it.

It is admitted that Mr. Holmes had previously conveyed the property to the defendant with some parol trust that a part, or all of it, should inure to the benefit of the plaintiff if he showed a disposition to take care of it. That deed Mr. Holmes seems to have kept under his control, and he destroyed it. This much appears from the defendant's testimony. It is a probable inference that when Mr. Holmes executed the deed in April, 1878, he believed it would in some way benefit the plaintiff, as the court finds. Of course if he fully understood the nature of that conveyance, and was at the time in the possession of all his mental powers, he could have entertained no such idea. But it is plain from his conduct that he did not suppose he had absolutely parted with the property in executing that conveyance, otherwise he would not have made the deed of August 20, 1878. It therefore seems that one of two suppositions is true: Either Mr. Holmes executed the deed in April under some misapprehension as to its legal effect and import, or he was incapable of transacting the ordinary business of life at that time. For, about four months afterwards he executed another deed conveying the same property to the plaintiff. If, through mental weakness and failure of memory, he had so soon forgotten the fact that he had absolutely parted with the title a short time before, a strong presumption arises that he did not fully comprehend business transactions in April, as it is not claimed there had been any change in his condition within four months. It is most emphatically a case, considering all the circumstances, where the burden was upon the defendant of proving the perfect fairness of that transaction and the capacity of Mr. Holmes. If the deed of

April is for any reason invalid, his title fails. If the deed of August is invalid the plaintiff takes the property as the only heir of Mr. Holmes.

Some importance is due the fact that the defendant had married the only daughter of Mr. Holmes, who had died long prior to 1878. The defendant held, therefore, that relation to Mr. Holmes where undue influence had a field to work upon in the condition and circumstances in which the latter was placed. It is a familiar doctrine that a court of equity scans with great jealousy a transaction where there are any grounds for holding that influence has been acquired and abused, or where confidence has been reposed and betrayed. *Smith v. Kay*, 7 H. L. Cas., 750, 759.

An effort was made to prove that the deed of April 23, 1878, was executed in payment of a legal claim of several hundred dollars which the defendant had against Holmes. But the court found that there was no consideration for the deed, which must be understood as finding that there was no pecuniary consideration. That conclusion is warranted by the great weight of testimony. There are valid reasons for saying that the motive for that deed was confidence and affection which the grantor entertained for or reposed in the defendant. There are also reasons for assuming that this confidence and affection were shaken or impaired by subsequent events. But that the deed was without any pecuniary consideration, and was intended to be in the nature of a testamentary grant, is a conclusion which seems most probable from all the evidence in the case. We therefore think the court below was justified in finding that, by the conduct and language of the defendant, Mr. Holmes was induced to believe and did believe that the instrument obtained from him in April, 1878, was executory, and not absolute, and was in some way for the benefit of the plaintiff, and was deposited with John A. Smith, as the former deed had been, subject to the grantor's control. At all events, it is impossible

to say that this view is against the preponderance of proof in the case. Consequently, without going into any further discussion of the evidence, or considering the arguments ad-duced *pro* and *con* the validity or invalidity of the deed of April, 1878, we affirm the judgment.

*By the Court.*—It is so ordered.