**RUSSELL et al. v. BOYLES et al.**

No. 7459.

Court of Civil Appeals of Texas. Austin.
June 18, 1930.

Rehearing Denied July 9, 1930.

J. W. Thomas, W. S. Shipp, and A. L. Curtis, all of Belton, for appellants.

DeWitt Bowmer, of Temple, and Jas. B. Hubbard, of Corpus Christi, for appellees.

BAUGH, J.

This action is a will contest. Mrs. S. E. Russell devised all of her property to her four daughters, and left nothing to her four sons, contestants of her will in the trial court, and appellants here. The grounds of the contest were, first, that testatrix was of unsound mind at the time she executed her will; and, second, that she was induced by undue influence of the beneficiaries to disinherit her sons. Only the issue of mental soundness was submitted to the jury, on which the jury found against appellants. The court thereupon entered judgment against the contestants.

The first proposition complains of the failure of the trial court to submit to the jury the issue of undue influence, seasonably requested. The question here presented is: Was there sufficient evidence, taken in its most favorable light, to go to the jury on that issue? Considered in this light there was testimony to show the following:

That Mrs. S. E. Russell and her husband had been separated for many years. In the community settlement Mrs. Russell received 457 acres of land in Bell county. During the last ten years of her life up to March 30, 1927, she lived on said land and made same her home with her bachelor son, Jeff Russell. All the other children had married and left. That she had frequently stated during that time that she desired all her children to share alike in her estate; but that if any preference were shown to any of them she desired it to be shown Jeff, who had lived with and taken care of her and looked after her property. On March 30, 1927, because of maladies then threatening her life, she left her own home and went to that of her daughter, Mrs. Henry Boyles. She was then 74 years of age, afflicted with cancer, a heart leak, and sclerosis of the liver; was in a weakened condition, frequently suffering severe pains, and that her condition grew worse until death resulted on June 23, 1927. On April 10th, while at the home of Mrs. Boyles, at the instance of Henry

Boyles, her son-in-law, the county judge of Bell county came out to the Boyles home to prepare Mrs. Russell's will, but because the only witnesses there were Henry Boyles and Mrs. Boyles, he did not then prepare the will, but secured the data therefor from Mrs. Russell, returned to Belton, prepared the will in question, and with another witness returned to the Boyles home the following day, where Mrs. Russell signed the will while in bed. The following testimony of Mrs. Calhoun who had lived on the Russell place, near Mrs. Russell, during 1926 and 1927, and visited her often, was not challenged:

"I heard Mrs. Russell say something about what she thought parents ought to do about leaving property to the children. I was talking with her one day and she was telling me about having a deed to her home and that she had it cleared and that would be the only thing she would have to leave to her children; that they all worked for it and their father wouldn't leave anything that she knew of for them, and that she wanted that divided amongst all her children, and she said she wanted them to get it equally; wanted it divided amongst her children because that would be all that would be left for them. It was not very long before she died that she told me that, about in January I think before she was taken bad in March. * * * I remember Mrs.. Boyles coming over to Mrs. Russell's often while I was living there. I have heard her talk to her mother about Jeff; trying to get her to run him off and not let him live with her any longer. She tried to get her to run him off.' She told her mother that Jeff wasn't any account and wanted her to throw his things out, and didn't want him to hire certain people to work on the thresher, and first one thing and then another like that and Mrs. Russell finally had got her mind torn up and was nervous and got her bonnet and left and went to the garden and said that she was going to get some potatoes, and said that she wasn't going to run Jeff off; that he had stayed there and helped her when none of the rest of them had and that if he should leave her she would have to go to town and rent her house that none of the rest of them cared to live out here with her."

■ Undue influence in procuring the execution of wills has been so frequently before the courts that any extended discussion of the question here would serve no useful purpose. The law relative to the subject is fairly well settled. In the very nature of things each case must rest upon its own facts; and whether or not undue influence has been exerted by an interested beneficiary must usually be established largely by circumstances. Opportunity to exert such influence, the age of the testatrix, her physical condition, or the fact that she preferred one child over another, may not, if taken alone, be any evidence of undue influence, but when many of these circumstances are present in the same case, and the devise is an unnatural one, such combined facts and circumstances may be sufficient to take the issue of undue influence to the jury.

■■ Discarding in this case the testimony negativing undue influence, and accepting as true that indicating that Mrs. Russell had at all times prior to going to the home of Mrs. Boyles, on March 30, 1927, desired that all her children should share equally in her estate; that for several years her memory had been failing; that she was in an enfeebled condition when she executed her will twelve days after she went to the home of her daughter; that she was then being cared for by Mr. and Mrs. Boyles, who were instrumental in having said will written, and one of the four beneficiaries; that Mrs. Boyles had expressed her animosity towards Jeff, who had cared for his mother for ten years, and who was then disinherited by her; that all the boys had labored to help pay for the property being disposed of by the will; that none of these boys were present nor did they know anything about such will being so executed, but that same was done in the home and in the presence of Mr. and Mrs. Boyles; and that disinheriting her sons was an unnatural thing to do—we conclude that there were sufficient facts and circumstances to take the issue of undue influence to the jury. Craycroft v. Crawford (Tex. Com. App.) 285 S. W. 275; 41 Cyc., 1151 et seq.; 28 R. C. L. 142 et seq.; 13 Cyc. of Evidence, p. 223 et seq. Contradictory testimony and the weight and credibility of that to which we have referred are, of course, matters exclusively in the province of the jury.

■ Another question is presented. Appellants took the depositions of Carl McGlothin and wife, who resided in Live Oak county, Tex. The interrogatories propounded were answered jointly by both witnesses, only one set of answers being returned, and that signed and sworn to by both witnesses jointly. The appellants thereupon moved to suppress said depositions. This motion was overruled, and said depositions were offered in evidence by appellees. This was error. The interrogatories were duly crossed and were subject to all objections which could have been made to the testimony of said witnesses, had they appeared in person at the trial. Article 3766, R. S. 1925. And when offered by appellees they became the evidence of the appellees, without waiver or estoppel by appellants to object to them in any manner for irregularities. Magee v. Paul (Tex. Civ. App.) 159 S. W. 325. The law clearly contemplates, in case of depositions as in personal testimony before the court, that a party to a suit shall have the separate and individual testimony of each witness, given under the binding force of his own individual oath, and subject to individual penalties if guilty of perjury or false swearing. Joint testimony, therefore, given in the

plural, and signed jointly by two witnesses separately interrogated, does not comply with the requirements of the law, nor entitle such evidence to admission. The court erred in permitting same to be read to the jury.

For the errors stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.