Zella E. HASSELL, Proponent,

v.

Bertha PRUNER et al., Contestants.

No. 6553.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 9, 1956.

Rehearing Denied Feb. 6, 1956.

Allen & Allen and Boyer & Lemon, Perryton, for appellant.

Roy Sansing, Higgins, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment duly entered upon a jury verdict denying the application of proponent, Zella E. Hassell, to have the will of Mrs. Abbie Evans, deceased, admitted to probate. The testatrix, on January 13, 1954, executed the will naming proponent, Zella E. Hassell, the sole beneficiary of personal property set out in the said application as consisting of cash, bonds and stocks of the probable value of $24,000 and likewise naming proponent as independent executrix. Testatrix died at the age of 83 years on July 13, 1954, and three days thereafter proponent filed her application to have the will admitted to probate.

Contestants, Bertha Pruner, a niece of testatrix, and ten other named nieces and nephews of testatrix and Johney Albert, a half-brother of testatrix, as the sole and only heirs at law of testatrix, all being adults, filed their contest of proponent's application to probate the said will alleging, among other things, that testatrix did not possess testamentary capacity to make such will and that such will was procured as a result of undue influence exerted upon testatrix by Zella E. Hassell. The will was admitted to probate by the Ochiltree County court on October 28, 1954, and an appeal was perfected to the district court of the said county where a trial de novo was had before a jury which found that testatrix had testamentary capacity to execute the will but it further found that the will was procured as a result of undue

influence exerted upon testatrix, Abbie Evans, by proponent, Zella E. Hassell. Judgment was accordingly entered upon the jury verdict denying the application for probate of the will from which judgment proponent perfected an appeal.

Before the evidence was heard, contestants filed their admissions of facts as provided for in Article 3348, Vernon's Annotated Civil Statutes, except as such may be defeated by pleadings and proof offered, for which proof on the whole contestants assumed the burden of making. By reason of such the trial court permitted the contestants to open and close in adducing the evidence and in making arguments to the jury.

In support of her contentions made upon appeal, proponent asserts that:

"This appeal raises two questions:

"(1) Is there any evidence of undue influence, and if so, is it sufficient to support the jury verdict?

"(2) Did the trial court err in permitting the appellees (contestants) to open and close the evidence and argument to the jury?"

Contestants have joined issues with proponent upon the two questions presented.

In our opinion, the controlling question to be here determined is that of whether or not the jury was justified in finding that the will offered for probate was procured as a result of undue influence being exerted upon Abbie Evans by proponent, Zella E. Hassell. While it is admitted that each case "involving undue influence must stand on its own bottom" in so far as the facts are concerned, we think the law generally governing such an issue has been clearly stated, with ample authorities in support thereof cited, by this court in the recent case of Truelove v. Truelove, Tex. Civ. App., 266 S.W.2d 491 (writ refused). That case was tried by the same trial court which tried this case. However, in that case the issue of undue influence was a strongly contested issue between the nearest of kin to the testator, while in the case at bar

the proponent was in no way related to the testatrix, while the contestants were the nearest of kin to the testatrix. At any rate, we refer to the Truelove case for a consideration of the principal rules of law which govern the controlling question presented here.

In consideration of the first part of proponent's first question propounded concerning whether or not there is any evidence of undue influence, we assert that according to the record presented there is evidence which tends to show the existence of the exercise of undue influence upon testatrix by proponent as will be hereinafter shown. Concerning the remainder of proponent's first question as to the sufficiency of the evidence to support the jury finding of undue influence, the rule has been well stated that if there be sufficient evidence of probative force to support the jury findings, the parties to the suit and the appellate courts are bound thereby. To test the sufficiency of the evidence to determine if it will support the jury finding, we must give credence only to the evidence and circumstances favorable to the finding and disregard all of the evidence to the contrary, indulging every legitimate conclusion which tends to uphold such finding. Truelove v. Truelove, supra; Greenspun v. Greenspun, Tex.Civ.App., 194 S.W.2d 134, affirmed 145 Tex. 374, 198 S.W.2d 82; Barksdale v. Dobbins, Tex. Civ.App., 141 S.W.2d 1035 (writ refused).

Other rules of law governing a proper answer to such an issue as is here presented have been well stated in the following language:

"The existence of undue influence is a question of fact, and from its very nature, like all fraudulent and vicious schemes, hides its features behind masks and operates in dark and secret places and in covert ways, and proof of it must usually be by circumstantial rather than by direct testimony. Those circumstances may be the condition of the testator's mind, his age, weakness, and infirmity, his surroundings and the

circumstances attending the execution of the will, the opportunity for the exertion of such influence as would trammel or destroy the exercise of free agency in the disposition of the property, the words and acts of testator and beneficiary, the existence of confidential relations between them, and the injustice, unreasonable and unnatural character, of the will. Rollwagen v. Rollwagen, 63 N.Y. 504; Woodbury v. Woodbury, 141 Mass. 329, 5 N.E. 275, 55 Am.Rep. 479; Bryant v. Pierce, 95 Wis. 331, 70 N.W. 297; In re Barney's Will, 70 Vt. 352, 40 A. 1027; Marx v. McGlynn, 88 N.Y. 357; Smith v. Smith, 60 Wis. 329, 19 N.W. 47." Holt v. Guerguin, Tex.Civ.App., 156 S.W. 581, 584, affirmed as to the rules here cited, 106 Tex. 185, 163 S.W. 10, 50 L.R.A., N.S., 1136.

The rule of law above quoted has since been consistently cited with approval by our courts in cases such as the one at bar. Particularly was it cited in a case similar to this wherein a will had been admitted to probate in a county court but probate denied in a district court upon a trial de novo when the court used the following language:

"'It is generally true that the exercise of undue influence in procuring the execution of a will can only be shown by circumstances. Direct evidence of such fact is rarely ever obtainable * * *.' In determining this question, 'All of the circumstances shown by the evidence should be considered and even though none of the circumstances standing alone would be sufficient to show undue influence, if when considered together they produce in the ordinary mind a reasonable belief that undue influence was exerted in the procurement of the will, they are sufficient to sustain such conclusion.' Mayes v. Mayes, Tex.Civ.App., 159 S.W. 919, 922; Russell v. Boyles, Tex. Civ.App., 29 S.W.2d 891; Holt v. Guerguin, Tex.Civ.App., 156 S.W. 581."

Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035, 1038, writ refused.

In the case of Pullen v. Russ, Tex.Civ. App., 209 S.W.2d 630, 634, this court recognized with approval the following rule:

"It has been held that the opportunity to exert such influence, the age of the testator, his physical condition, the fact he preferred one child over another, and the original testamentary intentions of the deceased are circumstances which, if taken alone, would not necessarily be evidence of undue influence. However, when taken in the same case and when the devise is either unnatural or, to say the least, contrary to the testator's previously announced intentions, such combined facts and circumstances are sufficient to take the issue of undue influence to the jury. Russell v. Boyles, Tex.Civ.App., 29 S.W.2d 891, error dismissed."

However, in that case this court held that the evidence there presented failed to meet the test required by our courts, but in this case the record reflects a different factual situation.

In the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, a contested will was admitted to probate in the county court but the district court denied the will to probate when the jury found that the testatrix possessed testamentary capacity to execute the will but that the will was procured as a result of undue influence, just as the jury found in the case at bar. The Court of Civil Appeals, 98 S.W.2d 236, reversed and rendered the case in favor of the proponents on the alleged grounds that the evidence was insufficient to support the jury finding of undue influence. A writ of error was granted by the Supreme Court, which held that, taking the case as a whole, there was enough evidence, together with the existing circumstances, to raise a fact issue on the question of undue influence, thus supporting the jury finding and the trial court, and remanded the case to the Court of Civil Appeals with instructions accordingly. The Court of Civil Ap-

peals, following the instructions of the Supreme Court, affirmed the judgment of the trial court based on a jury finding of undue influence. 129 S.W.2d 1206, writ dismissed W.O.J. 133 Tex. 623, 138 S.W.2d 798.

The statement of facts is voluminous and that bearing on undue influence is very extended and some of it is cumulative in nature. However, we shall now examine as briefly as possible what we believe to be the most pertinent parts of the facts and circumstances in support of the jury finding of the existence of undue influence. We consider it important to give a portion of the background of the life of testatrix leading up to the execution of the will being here contested. The husband of testatrix died in 1941 at Darrouzette, Lipscomb County, Texas, where they had lived for many years. No children were born to the marriage. Before her husband died, Abbie Evans was an immaculate housekeeper and a good cook. Her normal weight was then from 100 to 110 pounds. She had arthritis in her wrists and her feet were somewhat deformed. After her husband's death, she attempted to maintain her home in Darrouzette. Her half-brother, Johney Albert, lived in Brandon, Iowa. Her nieces and nephews who are contestants herein all lived in the State of Colorado. Her said relatives were not possessed of much wealth. However, some of them did find it possible to visit Abbie Evans on several occasions and they often sent Christmas and birthday presents to her. She had any number of good neighbors who often helped her to maintain her home. She corresponded with her niece, Bertha Pruner, a contestant herein, up until the time of her death, even though in late years her letters were written by proponent, Zella E. Hassell, in whose convalescent home she was a patient for approximately two years immediately before her death.

Immediately after the death of her husband, testatrix began a rapid decline in health and in mental stability. She soon began living only in the kitchen of her house, sold her bathtub and lavatory from her bathroom, refused to use her commode and as her only sanitary system she used a bucket and the back door. Her weight dropped to 70 or perhaps to 60 pounds. Most of her time was devoted to sorting coal among a number of buckets which she kept in the kitchen and in storing water in as many as 33 different containers she kept in the kitchen. She would not use water piped into her kitchen but the good neighbors kept her a supply of coal and of water in her kitchen from the well in her yard. She had a cancerous spot on her face, which spot began to spread on her face and her mental condition continued to deteriorate.

Among her good neighbors in Darrouzette were Lipscomb County Judge G. A. Jenkins and his wife who had been good friends and neighbors of testatrix since 1922 and who were also very good friends of her husband so long as he lived. They and others helped testatrix in her home life until she became quite a burden and it became necessary to relieve the penurious conditions in her home which had become very unsanitary. In 1952, Judge Jenkins and his wife arranged with proponent to place testatrix, Abbie Evans, in the convalescent home of proponent, Zella E. Hassell, for her support and care at a consideration of $100 per month with her furnishing her own medical care, but the price therefor was soon raised by Zella E. Hassell to $300 per month and so continued until the death of testatrix, although it was admitted by proponent that her usual price for keeping others in the home was from a minimum price of $100 per month to a maximum price of $160 per month.

Proponent had previously worked in a convalescent home in the State of Ohio and in another one in Claude, Texas, before she opened her own convalescent home in Booker, Lipscomb County, Texas, but soon thereafter moved it in 1952 to Perryton, Ochiltree County, Texas, an adoining county to Lipscomb County. While proponent's husband, C. K. Hassell, held a job of his own and their 17 year old son, Paul, was a student, they both helped proponent operate the home when they were there. Although

testatrix, Abbie Evans, was well cared for in the home, in so far as the record reflects, and she gained in weight while there, she had what the doctor called a crippling type of arthritis and her physical condition was so bad she had to be carried about or was kept in a wheel chair. She was not able to be up and around with other patients. She was helpless, could not bathe herself or feed or dress herself and was referred to as a night diaper case. On one occasion proponent said Abbie Evans could not be left alone and with one or two exceptions proponent was always present when friends and neighbors of long standing visited Abbie Evans, who complained to Judge Jenkins on one occasion to the effect that proponent had threatened to throw her out of the home.

On December 4, 1942, after the death of Abbie Evans' husband, she executed a will leaving substantially all of her property equally divided between her half-brother Johney Albert, of Brandon, Iowa, one of the contestants herein, and her sister, Mrs. Isa Dole, of Liman, Colorado, the mother of all of the other contestants herein. After the death of her said sister, Isa Dole, Abbie Evans said she wanted her relatives, the contestants herein, to have her property. The record reveals that there was never any animosity or unfriendly feeling between testatrix, Abbie Evans, and any of the contestants. However, on November 3, 1952, proponent called by telephone Honorable H. K. Harrelston of Booker, Texas, a practicing attorney for 30 years, and asked him to come to her convalescent home and prepare a will for Abbie Evans. Upon his arrival at the home, he found proponent, Zella E. Hassell, and a Mrs. Essie B. Byrd with Mrs. Evans, who told the attorney she wanted to change her will and gave to him her former will then in effect leaving substantially all of her property to her half-brother, Johney Albert, and her sister, Isa Dole, who was then deceased. The attorney then asked to be left alone with Mrs. Evans when proponent, Zella E. Hassell, said, "She can't be left alone." The attorney then sought to prepare the will in the presence of all three ladies. He took the names of her relatives and asked Mrs. Evans what changes she wanted made in her previous will and how much she wanted left to each of the various named relatives but Mrs. Evans was slow to answer and hardly had a chance to "put in a word edgewise," because of the conversation of the other two ladies. Before Mrs. Evans found an opportunity to answer him, proponent, Zella E. Hassell, said, "They (meaning Mrs. Evans' relatives) don't come to see you and they don't care anything about you. What do you want to leave them anything for? Why don't you leave it to us." (Meaning by "us" herself and Mrs. Essie B. Byrd). Such conversation continued for half an hour when testatrix, Abbie. Evans, finally decided to will and bequeath her property equally divided between proponent, Mrs. Zella E. Hassell, and Mrs. Essie B. Byrd, with the latter named as independent executrix. The will was so drawn in the presence of the other two ladies and so executed by her and was delivered by the attorney to proponent, Zella E. Hassell. It was the opinion of the attorney who prepared the will that Mrs. Hassell and Mrs. Byrd unduly influenced Mrs. Abbie Evans to execute the will and that the conduct of the said ladies, Mrs. Hassell and Mrs. Byrd, on the said occasion was shocking to him. However, some two weeks later the same attorney was called by proponent, Zella E. Hassell, to come to the home and prepare a power of attorney. Upon his arrival, proponent told him Mrs. Abbie Evans wanted to give Mrs. Essie B. Byrd a power of attorney to manage her affairs. He asked Mrs. Evans if she so desired and she said she did. The attorney prepared such and it was accordingly executed. The attorney testified that he did such feeling that the power of attorney would be necessarily put of record which would result in bringing all of these matters out in the open, which it did.

Judge Jenkins learned of the execution of the power of attorney and the will, found an opportunity to talk alone to Mrs. Abbie Evans and told her about the will and power of attorney she had executed but she said

she had not executed any such instruments. However, when Judge Jenkins convinced her she had executed such, she wanted them both revoked and she gave Judge Jenkins instructions to have a new will prepared for her, revoking the one recently made on November 3, 1952, naming proponent and Mrs. Byrd as beneficiaries and that she wanted another will drawn so as to give all of her property to her half-brother, John Albert, and her nieces and nephews, the children of her deceased sister, Isa Dole, all of whom are contestants herein. Judge Jenkins had such a will prepared for her, devising and bequeathing all of her property to her nearest relatives, contestants herein, naming each of them and giving their respective addresses in other states, after which Judge Jenkins read the will in full to Mrs. Abbie Evans who said that was exactly what she wanted done. She then and there executed the new will accordingly on November 19, 1952, so devising all of her property and it was witnessed by Judge G. A. Jenkins and E. J. Tarbox, sheriff of Lipscomb County. Under her directions, this will was placed in the safety deposit box of Abbie Evans of the First National Bank of Darrouzette, Texas, together with her other valuable papers including bonds, notes and certificates of deposit, which deposit box she kept until her death. Abbie Evans likewise, on November 19, 1952, revoked the power of attorney executed by her in favor of Mrs. Essie B. Byrd but not until after Mrs. Byrd had presented the power of attorney to the officers of the bank with the announcement that she would thereafter sign Mrs. Evans' checks and look after her other business affairs. However, the bank officers refused at the time to honor the said power of attorney which was soon thereafter revoked.

The evidence reveals that proponent took the initiative in finding an attorney to draw the last will executed and here offered for probate by her when she called her friend, Thomas A. Davis, the local county service officer for veterans, to whom she had previously rendered favors and who had likewise previously accommodated her, and asked him to bring an attorney to her convalescent home. Thomas A. Davis took his own attorney, Hon. Jack M. Allen, a reputable young attorney of Perryton, Texas, who is one of proponent's counsel in this action, over to the convalescent home where he visited with Mrs. Abbie Evans, whom he had not seen before. Mrs. Evans told him she wanted to change her will, leaving out her relatives and giving all of her property to Mrs. Zella E. Hassell, and that she was leaving out her relatives because "They don't care anything about me, and I don't want to give them anything," which was in substance the same statement Zella E. Hassell had made about her relatives some months previously when she then successfully urged Mrs. Abbie Evans to will her property to proponent and Mrs. Essie B. Byrd, who had thereafter died in July, 1953. Mr. Allen prepared the will accordingly and it was executed on January 13, 1954, with the said attorney, Jack M. Allen, and Arthur L. Golden, as witnesses thereto, both of whom lived in Perryton and in so far as the record reflects, neither of them knew about the previous experience of testatrix in executing the power of attorney and the previous will of date November 3, 1952, giving her property to proponent and Mrs. Byrd and thereafter revoking both the will and the power of attorney. After the will was executed, Mr. Allen gave it to proponent's husband and proponent and her husband took the will back to Mr. Allen on July 16, 1954, three days after the death of testatrix, and arranged with him to file it for probate.

On July 13, 1954, the date of the death of testatrix, proponent called by telephone Mrs. Bertha Pruner, one of the contestants, at Woodrow, Colorado, and advised her of the death of her aunt. When Mrs. Pruner replied she was not well and was not sure she could come to the funeral, Mrs. Hassell replied, "It doesn't matter whether you come or not. She's changed her will and left everything to me so you don't have to come if you can't."

The will offered for probate named proponent as the sole beneficiary and also named her as independent executrix. It also recites that the testatrix gives her property to Zella E. Hassell "in consideration of the kind and loving care she has given me during the last years of my life." However, for such care for approximately two years or less, testatrix had paid proponent her own price of $300 per month, except for a short time in the beginning when by agreement she paid proponent $100 per month until the price was raised to $300 per month by Mrs. Hassell. Testatrix paid proponent for such kind and loving care three times as much as the minimum charge she made for other patients and nearly twice as much as the maximum charge she made for other patients. It was probably worth more to care for Abbie Evans with her afflictions but Abbie Evans paid proponent more than the usual price because of her afflictions.

It is shown by the record that proponent had made an arrangement with a Mr. David P. Lambert whereby he conveyed to her by written contract of date November 12, 1952, realty of the value of $7,000 and cash in the sum of $15,000 in consideration for which proponent agreed to care for him in her home "for the balance of his natural life" at an agreed rate of $75 per month to be charged against the amount given her, so long as he lived, and after his death she was to have any and all of the remainder. The terms of this said contract were still in force and were being carried out at the time of the trial of this action. Although this transaction was between proponent and another person not here interested, the said contract was executed only a few days after the will of date November 3, 1952, was executed by testatrix naming proponent as a principal beneficiary but was thereafter revoked. The said contract was likewise executed some months prior to the execution of the will offered by proponent for probate, executed by Abbie Evans, and the same was executed between her and another patient in the same convalescent home. If such is of any value as evidence it may have some

bearing upon the interest, motives and intentions of proponent in connection with a similar matter as a result of similar acts performed at or near the same time when testatrix executed the wills mentioned. Presumably such was offered as circumstantial evidence merely to throw some light upon proponent's interest and motives in handling such matters.

In the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, the following factors concerning undue influence are considered important:

(1) Weakness of mind and body of testator produced by the infirmities of age and disease.

(2) The unnaturalness of a will which by its terms makes a difference between those who, according to natural law, ought to stand as objects of the testator's bounty.

(3) The opportunity of a proponent (and in the Long case, the proponent was the testator's son and not an unrelated person) to unduly influence the testator.

(4) The selection of an attorney by proponent to prepare the will.

(5) The consistent association of proponent with testator and attending to his business for him.

(6) The taking charge of testator's will by proponent after it was executed.

Other circumstances which have been considered by the Texas courts in determining whether or not a jury finding of undue influence was supported by the evidence are:

(1) Activity on the part of proponent in procuring the execution of the will. Gunlock v. Greenwade, Tex. Civ. App., 280 S.W.2d 610.

(2) Evidence of prior wills and of testator's previous statements showing a consistency of intent to give property to persons who were natural objects of the testator's bounty. Barks-

dale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035; Schelb v. Sparenberg, Tex.Civ.App., 111 S.W.2d 324, affirmed 133 Tex. 17, 124 S.W.2d 322.

While the jury found that Abbie Evans had testamentary capacity it would have been justified in further finding and concluding under the facts and circumstances presented that her age and her physical disabilities had affected her mental condition to such an extent that she would be easily influenced and that proponent's activities showed her willingness and ability to exercise undue influence upon testatrix. The jury is presumed to have considered the unnaturalness of the will offered for probate in that it named a person not related to testatrix in any way the sole beneficiary, although testatrix had paid the named beneficiary well for the care given her in the home, and it did not leave anything to her nearest relatives, the contestants, to all of whom testatrix must have so recently felt obligated and bound by reason of her statements made and her previous will executed naming them and them alone as beneficiaries. By such acts she also revoked the previous will she apparently did not know she had made naming proponent one of the principal beneficiaries. There is ample direct evidence to lead a jury to believe that proponent, Zella E. Hassell, exercised undue influence upon testatrix, Abbie Evans, in procuring the execution of the will of date November 3, 1952, and thus leading the jury to further believe that if proponent would openly exercise such undue influence upon testatrix on November 3, 1952, she would not hesitate to repeat such more cautiously a few months later. Such would particularly so appear since the evidence reveals that proponent was with testatrix almost constantly, did not intend to leave her alone with others, and took the initiative in having an attorney come to the home to prepare each of the wills naming her as a beneficiary. Then proponent took charge of the first will executed and her husband took charge of the last will here offered for probate and kept it until testatrix died, after which proponent and her husband

offered it for probate. Neither will was placed in the safety deposit box of testatrix kept for her valuable papers at the bank.

In applying the well recognized rules of law to any given case, the person charged with exercising undue influence over another does not necessarily need to be actually present in person at the time the instrument in question is executed. Such undue influence may have been exercised through fear, threats, deception or some other means of persuasion over the person being unduly influenced immediately prior to the execution of the instrument in question or it may have been consistently and successfully exercised for a long period of time prior thereto. The material question to be determined is whether or not undue influence was actually exerted as alleged. Undue influence has been defined as being "that which compels the testator to do that which is against his will from fear, the desire of peace, or some feeling which he is unable to resist." 3 Tex.Jur. p. 792, Sec. 2. It was not unreasonable for the jury to believe under the facts and circumstances presented that testatrix felt compelled to execute a will in favor of proponent on the last occasion in particular because of facts and circumstances herein presented, or possibly for fear she may be thrown out of the convalescent home if she declined to do so and that she could not resist proponent's approaches in her desire for peace and harmony during her declining years.

When all of the foregoing rules of law are applied to the facts and circumstances here presented, we believe there is ample evidence of probative force to support the jury finding of undue influence. An examination of all of the evidence reveals that the jury verdict on the issue of undue influence is not unjust and that such a verdict is not contrary to or against the overwhelming weight and preponderance of the evidence. On the contrary, the verdict is well supported by the evidence. We further cite the cases of Willis v. Lewis, 28 Tex. 185; Choate v. San An-

tonio & A. P. Ry. Co., 90 Tex. 82, 36 S.W. 247, 37 S.W. 319; King v. King, 150 Tex. 662, 244 S.W.2d 660; "The Question of Insufficient Evidence on Appeal," by Supreme Court Justice W. St. John Garwood, 30 T.L.R. 803.

■ Proponent next complains because the trial court permitted contestants to open and close in presenting the evidence and in making the arguments to the jury. Proponent admits that contestants were charged with the burden of proof upon the issue of undue influence pleaded by them as an affirmative defense. In the case at bar the issue of testamentary capacity was raised and pleaded for the first time by contestants also as an affirmative defense. They pleaded as an affirmative defense that testatrix did not have testamentary capacity to execute the will offered for probate and proponent denied such allegation in a supplemental pleading filed. Therefore, according to the pleadings filed herein, contestants assumed the burden of proof on both issues presented, namely, lack of testamentary capacity and undue influence. While proponent was charged by law with establishing to the satisfaction of the probate court that the testatrix was of sound mind when she executed the will, nowhere does the record reveal that proponent pleaded such, but only denied the issue negatively pleaded by contestants. When contestants filed their motion admitting all of proponent's allegations and her right to recover except as such right may be defeated by pleadings and evidence presented by them, the trial court, under the record before it, did not abuse its discretion in sustaining such motion and permitting contestants to open and close in presenting the evidence and making the arguments to the jury, since contestants had the burden of proof on the whole case. Rules 269, Sec. (a), and 266, Texas Rules of Civil Procedure. However, in any event, if the trial court's action constituted error in permitting contestants to open and close, such was not a reversible error. Proponent admits that contestants had the burden of establishing undue influence and the trial court's judgment is based wholly upon the jury verdict on that issue. Although contestants assumed the burden of proof upon the issue of lack of testamentary capacity and the issue was accordingly submitted to the jury, they failed to establish their alleged claims to the satisfaction of the jury and that question was finally determined in proponent's favor and becomes moot.

Assuming that it was error for the trial court to refuse proponent the right to open and close in adducing the evidence and in making the argument, the burden was then upon proponent to show from the record as a whole that the alleged error committed by the trial court amounted to such a denial of rights of proponent as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434; City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860. In the case at bar, proponent failed to discharge such burden and the error, if there be such, is not a reversible error in any event.

■ Contestants have presented a cross assignment charging error because the trial court excluded from the jury testimony that had a tendency to establish a system, scheme or plan of proponent to influence other patients in her home in executing similar instruments under similar circumstances which would result in monetary benefits for proponent. Because of our disposition of the other matters, we do not consider this matter important. However, the cross assignment is overruled.

A careful examination of the record reveals no reversible error. Proponent's points to the contrary are overruled and the judgment of the trial court is affirmed.