## REED v. SOUTHERN PAC. CO.

No. 8313.

Court of Civil Appeals of Texas. Austin.

Dec. 9, 1936.

Rehearing Denied Jan. 6, 1937.

Cocke & Marberry and Benton Coopwood, all of Austin, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Smith, Brownlee, Goldsmith & Bagby, of Austin, for appellee.

BAUGH, Justice.

Appeal is from a judgment based upon an instructed verdict in favor of appellee, plaintiff below, against appellant, for freight charges and demurrage on two carloads of cedar posts shipped by appellant over appellee's line of railway, in March, 1933, from Texas points to Pantano, Ariz., and rejected there by the consignee. One car was shipped from San Saba, Tex., on March 16, 1933, and arrived at Pantano, on March 22d; the other car was shipped from Uvalde, Tex., on March 20, 1933, and arrived at Pantano on March 24th. Immediately upon arrival the consignee refused to receive them and the Railway Company so notified appellant. On April 5, 1933, Reed requested appellee in writing to immediately unload said posts, "in order to stop demurrage"; and on April 8th wrote appellee as follows: "Without prejudice to our rights, you are authorized to sell, without the usual ten days notice, or advertising, cedar posts in cars T. & N. O. No. 37693 and T. & N. O. No. 50746, for account of whom it may concern, refused by J. Knox Corbett Lumber and Hardware Company," etc.

The Railway Company removed the posts from Pantano, a small nonagency station, to Tucson, the county seat of the county in which Pantano is located, sold same on April 21st at Tucson for a total of $243.20. The total freight charges on said shipments amounted to $588.08, to which the Railway Company added demurrage charges for 17

days on one car and 19 days on the other, aggregating $176, and a wire service charge of $2 in connection with said shipments, making an aggregate total sum of $766.08, which was credited with the amount for which the posts were sold, leaving a balance of $522.88 claimed by the Railway Company against Reed, for which sum this suit was brought.

Reed, in addition to general and special exception and general denial, filed a cross-action against appellee for the value of his posts, less freight charges, alleging want of authority in appellee to remove said posts from Pantano to Tucson for sale, negligence of appellee in failing to obtain a fair price for such posts, and denied liability for demurrage on the cars subsequent to April 5, 1933, when he requested appellee to unload the posts in order to save demurrage. Trial was to a jury, but at the close of the evidence the court instructed a verdict in favor of the Railway Company for the full amount sued for, and rendered judgment accordingly; hence this appeal.

The first contention of appellant questions the sufficiency of appellee's petition as against a general demurrer. We deem it unnecessary to discuss this issue here. The petition was, we think, when the required presumptions are indulged in support of it, clearly sufficient as against a general demurrer to state a cause of action in the respects alleged.

 When the shipments were rejected by the consignee after same had reached destination, the relation of the carrier then became that of a bailee or warehouseman. Section 653, Rev.Code 1928 of Arizona; article 887, R.S. of Texas; 10 C.J. 269, § 386; 8 Tex.Jur. 246, § 156. The shipper would, of course, be liable for reasonable charges for demurrage or storage of such freight until it could be disposed of either under instructions from the owner or in the manner prescribed by the laws of Arizona. The appellee in the instant case pleaded both the letter above quoted from the appellant and the statute (section 653) of Arizona relating to the sale of unclaimed freight as authorizing and sustaining the sale made by it. The letter from Reed clearly authorized the sale of the posts by appellee, but gave no directions as to when, how, or where such sale should be had. Though the appellee pleaded the Arizona statute governing the sale of unclaimed freight as further authority for the sale as made, the Railway Company did not undertake to make the sale in the manner provided in such statute. This, however, was not, we think, material in view of the fact that Reed had authorized the appellee to sell the posts. It was, however, the duty of the Railway Company to give such notice and to make the sale in such manner and at such place as would reasonably assure that the posts would bring their fair market value. Reed's letter did not, under the circumstances, excuse the Railway Company from using reasonable diligence to see that the posts brought a fair price. The controlling question presented, therefore, is whether there was any evidence to go to the jury tending to show that the Railway Company did not use such diligence, and the extent of Reed's damage if it did not. We have concluded that there was.

The manner of making said sale by the Railway Company was to remove said posts from Pantano to Tucson, where the Railway Company "did thereafter advise a number of individuals and corporations engaged in the lumber business that it had on hand the aforesaid two cars of cedar posts and requested said individuals and corporations to submit offers for same." In response to this the appellee received six offers from different parties, the one accepted as the highest being 10 cents for each post measuring 6 feet or more in length, all posts of lesser length to be "thrown in" without charge. In this manner the two cars sold for the $243.20. There is shown in the agreed statement of facts, however, the following:

"6. It is further agreed by plaintiff and defendant that at the time the cedar posts mentioned in plaintiff's original petition arrived in Pantano and during the whole of the time they remained at Pantano there was a Federal Aid Road Project under construction at or near Pantano, which project needed cedar posts, under its specifications, of this same kind and description.

"7. It is further agreed by plaintiff and defendant that the plaintiff made no attempt to sell the cedar posts in or around Pantano.

"8. Plaintiff and defendant agree that according to the price for which defendant had contracted to sell said cedar posts, that the value of the cedar posts in Car T. & N. O. 50746 was $432.20, less the freight charges of $277.19; and that the value of said cedar posts in Car T. & N. O. 37693 was $468.00, less freight charges of $310.89, and that the above prices were reasonable

and a fair value of the posts delivered at Pantano, Arizona. It is distinctly agreed and understood that plaintiff does not admit liability for the value, as hereinabove set out, of said cedar posts."

It is, in effect, admitted that appellee made no effort to sell the posts to the contractors on the road projects at or near Pantano, where such posts were needed, and where, from the notations on the bills of lading for the two cars, it may be inferred that these posts were intended to be used. The agreed statement of facts also shows that $900 was a fair value of the posts at Pantano, yet they were sold by appellee for little more than one-fourth of such value.

 There was also offered in evidence the testimony of a lumber dealer in Tucson of 25 years' experience, which testimony was by the trial court excluded, as to the market value of such posts at Tucson and Pantano in March, 1933. The trial court excluded same on the ground that the sale was made in April, 1933. This testimony was to the effect that the market value of such posts was far in excess of the price received. We think the trial court erred in excluding such testimony. The general rule is that testimony as to market value at a time too remote from the date in question to be of any probative value should be excluded. In determining this the nature of the merchandise involved and the time, place, and surrounding circumstances should be considered. In the instant case the posts arrived at destination and were rejected in the latter part of March, 1933. Authority to sell was given by the shipper on April 8th, but the sale was not made until April 21st. The goods were not perishable. They were of such character that no material fluctuation in market value between March 27th and April 21st would likely occur. No change of conditions affecting their value over such intervening period appears to have occurred. At most we think the variance between such value in late March, 1933, and what it was on April 21st and prior thereto while appellee was negotiating the sale thereof would be a matter going to the weight rather than to the admissibility of the testimony offered and that it was erroneously excluded by the trial court. 17 Tex.Jur. p. 459, § 174.

These matters were clearly sufficient to go to the jury on the issue as to whether, granting the authority to sell the posts, the Railway Company had sold the posts for a price which, in the exercise of reasonable diligence under its duty to appellant, it should reasonably have obtained.

Nor do we think appellant should be held liable for the demurrage charges of $5 per car per day after receipt of notice from appellant to unload the posts in order to save such charges. Of course the Railway Company should have been allowed a reasonable time in which to unload same and would be entitled to a reasonable charge as warehouseman in so holding the posts; but it could not, after receipt of the request to unload same, arbitrarily hold the posts in its cars until it saw fit to sell them, and impose upon the shipper demurrage charges for any unreasonable or unnecessary time taken by it to unload them. These were all fact issues to be determined by the jury upon proper evidence.

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded for another trial.

Reversed and remanded.