## BOOTH v. CHADWICK.
### No. 11164.

Court of Civil Appeals of Texas. Galveston.
July 17, 1941.

Rehearing Denied Oct. 2, 1941.

R. E. Pennington, of Brenham, and Preston P. Reynolds, Earl E. Miller, and Geo. Clifton Edwards, all of Dallas, for appellant.

W. J. Embrey and Richard Spinn, both of Brenham, for appellee.

CODY, Justice.

While William H. Langhorne was in prison serving a life sentence he, on December 21, 1933, executed to E. C. Chadwick, trustee, a kinsman, a general warranty deed in trust, by which he conveyed to his said trustee all of his property and estate, in trust, for a period of ten years therefrom, and for as much longer as he did not himself terminate the trust, upon certain terms and conditions which involved managing the property and estate, paying off the debts and incumbrances thereagainst, and preserving the property while Langhorne was in prison. The trust deed provided that any attempted alienation, or mortgaging any of the property thus conveyed in trust by Langhorne, if made during the term of the trust, should be invalid and of no effect. This deed was properly recorded.

Thereafter, on August 2, 1939, while still confined as a prisoner serving a life sentence, the said Langhorne executed a deed of conveyance to half of all his property and estate to C. C. Booth, which was promptly recorded.

This suit was filed fifteen days after the date of said deed to C. C. Booth, by the

aforesaid Chadwick, trustee, and the said Langhorne, as plaintiffs, seeking the cancellation of the deed to C. C. Booth on certain grounds: one ground being that it was made during the period that the trust deed to Chadwick, trustee, was in full force and effect, which by its provisions rendered the deed to Booth void; other grounds being that the Booth deed was procured by Booth and confederates through fraud, misrepresentation, undue influence, coercion, duress, and without consideration, and that the transaction was fraudulent and unconscionable.

Thereafter, on September 5, 1939, there was filed an answer, beginning with these words: "Comes now defendant, C. C. Booth, voluntarily joined herein by William Langhorne, heretofore allegedly impleaded herein by the plaintiff, E. C. Chadwick, and with leave of the court first had and obtained, files plea herewith in abatement of this suit, on the following grounds:" The first ground pled in abatement being the allegation that the suit was not authorized by William Langhorne. The second ground attacked the trust deed, and alleged that the Deed of Gift from William Langhorne to C. C. Booth does not pass title until the happening of certain conditions subsequent, inclusive of the liberation of Langhorne from prison. Another ground alleged was that suit should have been brought by plaintiff in trespass to try title. Various other grounds were alleged in abatement, not necessary to be here detailed. To this plea in abatement the court sustained exceptions and demurrers, and overruled the plea, and determined the status of William H. Langhorne to be that of plaintiff in the suit.

Defendant C. C. Booth, joining Langhorne as defendant in his, Booth's pleadings, filed demurrers and exceptions to plaintiffs' petition, and filed a cross-action against plaintiff Chadwick seeking to set aside the trust deed on the ground that it was procured by fraud, and asked for an accounting of the administration of the trust since 1933. To this cross-action plaintiffs Chadwick and Langhorne filed exceptions and demurrers, and the court ordered said cross-action stricken. Thereafter, at the next term of court, a plea in intervention was filed in the name of Langhorne by the same attorneys that represented C. C. Booth, setting up the same matters as had been by the court ordered stricken when same had been made to appear in pleadings wherein Langhorne was designated as "defendant". In response to pleadings filed in the name of the former plaintiffs, Chadwick and Langhorne, said plea of intervention was ordered dismissed.

Thereafter, the court submitted to the jury the following special issues which the jury answered as indicated:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that C. C. Booth, or his authorized agents, made any false representations to William H. Langhorne, Jr., as charged, immediately prior to, at, or about the time of the execution of the deed in question?

"To which the jury answered, Yes.
"Special Issue No. 2.

"Do you find from a preponderance of the evidence that such false representations, if any, were material to the transaction in which they were then engaged?

"To which the jury answered, Yes.
"Special Issue No. 3.

"Do you find from a preponderance of the evidence that William H. Langhorne, Jr., believed and relied on such false representations, if any?

"To which the jury answered, Yes.
"Special Issue No. 4.

"Do you find from a preponderance of the evidence that William H. Langhorne, Jr., was induced by such false representations, if any, to execute the deed to C. C. Booth, conveying to him the property described therein?

"To which the jury answered, Yes.
"(Signed) Robt. Winkelmann, Foreman."

Defendant filed a motion for judgment notwithstanding the verdict, and plaintiffs Chadwick and Langhorne field a motion for judgment based upon the jury's findings of fraud, and also upon the terms and provisions of the trust deed. The court refused the motion of defendant and granted that of plaintiffs. Defendant appealed and will hereinafter be referred to as appellant, and plaintiffs Chadwick and Langhorne will hereinafter be referred to as appellees.

Appellant's first proposition is: "The court erred in overruling the motion of defendant for an instructed verdict." The gist of appellant's contention under this proposition is that the allegations in plain-

tiffs' petition of fraud related entirely to promises of what was to be done and caused to be done by him in the future; and that there was neither pleading nor proof that appellant did not, at the time of making same, intend to keep and perform said promises, so that no actionable fraud was pled or proved.

No claim is made by appellant that the allegations of appellees' petition were not sufficient to justify the submission of the four special issues to the jury.

The principal property belonging to Langhorne consisted of 2,800 acres in Washington County. The recited consideration for the deed is as follows: "* * for and in consideration of the necessary, unselfish, and brotherly services rendered me, unsolicited, in my misfortune by C. C. Booth of Dallas, Dallas County, Texas, and in further consideration of his having spent heretofore, as well as shall hereafter expend in my behalf, his personal funds, to secure the lawful annulment, cessation or suspension of my present legal status, under Texas Statutes and court stipulations, and in further consideration of my love and affection for said C. C. Booth, who, without desire for pay or hope of reward, but out of high regard for my late lamented father, William H. Langhorne, for over forty years, and out of sheer commiseration for me, when my blood relatives, profiting by an administration and form of management of my property and estate, seemed to have forgotten me practically in my dire and friendless plight."

The granting clause is as follows: "have given, granted, sold and conveyed, and do give, grant, sell and convey, or shall grant, sell and convey, as soon as law or any existing commitments heretofore signed by me, if valid, shall permit so to do, to the said C. C. Booth, a One-half (½) interest in and to all that certain real estate, etc."

The conveyance was made upon these terms:

"1. That C. C. Booth shall be sole agent to handle all matters with regard to his clemency efforts;

"2. That the estate conveyed in such deed, should revert to the said grantor, Langhorne, should the said C. C. Booth or his associates fail to diligently and continuously pursue and work for the liberation of said Langhorne from prison, but should Langhorne die, while such efforts are being made, the condition would be fulfilled.

"3. That if the Warranty Deed in Trust to E. C. Chadwick, should be proven to be invalid in law, or not carried out to its ten year period, and the courts should hold the present conveyance to Booth, vested no title to him in such lands, the conveyance should nevertheless become valid, immediately, on termination of the ten year period therein provided, December 21st, 1943.

"4. That the mineral interests in the lands should be subject to the same conditions.

"5. That if the court held that C. C. Booth never had title under the deed to the lands, then his expenditures, and time, working in Langhorne's behalf should constitute a claim against his estate."

Now the gist of the fraud charged against appellant by appellees is this: that appellant and those who acted with him inveigled appellee Langhorne into giving appellant a deed to half of his estate upon false representations, by which they induced him to execute it, that such representations were material, that he believed them and relied on such false representations, and was thereby induced to execute said deed.

The rule for relief through cancellation for fraud by misrepresentation is thus set forth by Black on Cancellation, Vol. I, pp. 169, 170:

"The essential elements of a fraudulent misrepresentation justifying rescission, have been broadly and roughly stated, in a large number of decided cases, somewhat as follows:

"(1) There must have been a false representation as to a material matter of fact; (2) there must have been scienter or guilty knowledge of its falsity on the part of the person making it; (3) the person to whom it was made must have been ignorant of its falsity; (4) there must have been an intention that it should have been acted upon by him; (5) the latter must have relied on the misrepresentations, and have been deceived by them and acted upon it; (6) resulting loss, damage, or injury to him must be shown as a consequence of it."

"An alternative statement of the principal rule is as follows: Actionable fraud exists where one makes a false representation of a material fact, know it to be false, or of his own knowledge, when he does not know whether it is true or false, with

272

intention to induce the person to whom it is made, in reliance upon it, to do or to refrain from doing something to his pecuniary hurt, when such person, acting with reasonable prudence, is thereby deceived and induced so to do or refrain to his damage."

And it is held in Janes v. Stratton, Tex.Civ.App., 203 S.W. 386, 388: "In order to cancel a deed or other contract on the ground of fraud, three things must concur, viz.: (1) False representation of a material fact; (2) the representations must have been believed to have been true by the party deceived; and (3) he must have relied upon said representations." The property was heavily involved at the time the trust deed was executed by Langhorne in 1933. There was a lien on the property at that time in the sum of $18,000, and delinquent taxes had accumulated thereagainst in approximately $8,000. In 1939 the indebtedness had been discharged and the property rehabilitated. Langhorne had been in prison since 1925, but his mother had not died until 1933. Without detailing the evidence, we hold that it was ample to support the jury's findings under the rule which requires that evidence adverse to the verdict be disregarded. Since the pleadings were sufficient to present the issues which were submitted to the jury, and the evidence was sufficient to support the jury's answers thereto, we overrule appellant's contention that the court should have instructed a verdict for appellant.

Appellant's second proposition is that, "The court erred in striking out defendant's cross-action and excluding all testimony attacking the Chadwick instrument, which plaintiff specially pleaded and which the defendant sought to answer and attack." The Chadwick instrument referred to is the deed by which Langhorne conveyed his property in trust to Chadwick, for a period of ten years, during which time it was by said conveyance provided that said trust should be irrevocable, and the terms of said conveyance undertook to make void any conveyance of such property by Langhorne during said period of ten years. The cross-action which was ordered stricken by the court attacked the validity of the trust deed to Chadwick from Langhorne, dated December 21, 1933, and sought its cancellation on the ground that it was not based upon sufficient consideration, and on the ground that it was procured through fraud,

undue influence, misrepresentations, and demands an accounting from Chadwick, trustee. The objection which the court sustained, and upon which he ordered the cross-action stricken, was that Langhorne, whose name appeared in plaintiffs' petition as a party plaintiff, could not, in the same action, be a party defendant and cross-plaintiff, and that the basis for the cross-action (to cancel the trust deed to appellee Chadwick) did not arise from nor grow out of the subject matter of the pending suit (i. e., the suit brought by appellees to cancel the deed to Booth); and that such a cross-action would present a misjoinder of causes of action; and that appellant Booth was not legally entitled to prosecute the claims asserted therein, nor did the same constitute a cause of action against plaintiffs, as if in an independent suit.

The action of the trial court in striking the so-called cross-action was correct. It is by force of R.S. 2017 that a defendant "may plead in set off any counter claim founded on a cause of action arising out of or incident to, or connected with, the plaintiff's cause of action." While the purpose of this statute is to prevent a multiplicity of suits, and it is therefore liberally construed, yet, in order for a cross-action or counterclaim to be available to a defendant to be pled against the plaintiff, the same must arise out of the transaction or be connected with the subject matter of the suit filed and declared upon by the plaintiff. Here the plaintiffs sought to set aside a deed to half of Langhorne's property obtained from him in August 1939 by appellant. Appellant could not undertake to set aside a trust deed granted by Langhorne in 1933, or call for an accounting in a cross-action. Appellant could not recover in an original suit against appellees for fraud, if any, which might have been perpetrated by Chadwick on Langhorne, and the rule is well settled that a party to a suit cannot recover in a cross-action unless recovery could have been had in an original suit thereon. Lakeside Sanitarium v. Dickens, Tex.Civ.App., 259 S.W. 1110; North Texas Oil & Refining Co. v. Standard Tank Car Co., Tex.Civ.App., 249 S.W. 253. See, also, Smith et al. v. Carter, Tex.Civ.App., 45 S.W.2d 398 to 400. Appellant's contention, presented in his second proposition, is overruled.

Appellant's proposition III is, "The court erred in excluding from evidence the letter of Langhorne to defendant Booth, dated

March 14, 1940." The letter referred to reads as follows:

"Letter of March 14, 1940.
"Name: William H. Langhorne No. 56920 Unit: Walls · (Huntsville)
               "Texas Prison
               "Huntsvill Texas
               "Mar 14, 1940.
"Major C. C. Booth
"2021 Bennett Avenue
"Dallas Texas.
"Dear Major:
"Received your nice letter a day or so ago and was glad to hear from you. I hope you understand my situation by now and that you will be willing to continue as my true friend whatever happens. Hope to talk with you again soon. Would be glad to write Father Kasper but haven't his address. Please sent it to me. Hope you have contacted Judge Emery by now. I am sure you and he can come to an agreement. Tell him it is my wish. If he refuses however you can just use your own honest notions in the matter. Please give your attorney my best reguards also Mr. Miller. Hope I can be there some day. Would appeciate anything you might be permitted to bring me on your next visit. Had a talk with a member of board several days ago. They said the agreement must be recinded because you couldn't help me in any way. If you have any news please let me hear from you soon.
"With kindest reguards to you and your wife and family.
"I remain your sincere friend.
          "William H. Langhorne.
"P.S. Please rest assured I wish you to continue your efforts for me if you can do so. Will write again sometime.
"Envelope: Postmarked:
         "Huntsville, Texas
         "Mar 14, 1940 10:30 A. M.
"After 5 days return to
"William H. Langhorne,
"Texas Prison
"Huntsville Texas
    "Major C C Booth
    "Bennett Avinue
    "Dallas Texas."

We are unable to tell from the proposition why it is claimed that the court erred in excluding this letter. The letter may indeed show that Langhorne did not bear any malice or resentment against Booth. But it does not rebut or tend to rebut the charges of fraud. Langhorne's testimony was that he was quite willing for appellant to secure his release from prison but only outside of the deed. The letter, however, by its terms, urges a compromise or adjustment. In any case we are unable to say from the record as presented that the exclusion of the letter constituted error.

By his IV proposition appellant complains that the court excluded from evidence the "style, the number of the suit, and the signature of plaintiff, with the affidavit certified by the notary at the conclusion of the petition as to the signature of William H. Langhorne, as follows: "William H. Langhorne et al., Plaintiffs v. E. C. Chadwick, et al., Defendants, No. 590." Appellant contends that said excluded evidence was admissible against Langhorne to show that at the time he was being put into the contest against Booth by Chadwick, he had signed and sworn to a petition against Chadwick; and further that it bore on the credibility of Langhorne in so far as he made attacks on Booth. From the record, however, it appears that the contents of the petition was not offered in evidence. With reference to some pleading, appellant's counsel stated to the court: "I merely want to introduce the style of the suit and the number, with the signatures of the parties to the petition, that's all. I don't want to introduce what's in the petition at all. I just want to ask to introduce the style of the suit, the number and the parties who brought it."

It does not appear from the statement of facts what the style of the suit in question was, who the parties to the petition were, and it does not appear for what purpose the same was sought to be introduced. Obviously, it is impossible to say, in this state of the record, whether the excluded evidence was admissible for any purpose, as the record does not reflect in any way what the excluded evidence consisted of.

Appellant's Proposition V reads: "The court erred in refusing to allow a full, fair, and legal cross-examination of Chadwick, the plaintiff." The proposition does not point out any specific error, or in what respect the court did not allow a legal cross-examination of Chadwick. Appellant can show error in connection with excluded evidence only by showing its materiality. Bender v. Kellahin, Tex.Civ.App., 109 S.W.2d 561; Merchants Casualty Co. v. Bailey, Tex.Civ.App., 113 S.W.2d 630.

In his Proposition VI, appellant makes the complaint that the court refused to allow a full, fair and legal cross-examination of Langhorne. What has been said with reference to appellant's Proposition V applies equally to his Proposition VI.

Appellant's Proposition VII complains that the court refused to allow his counsel to interview Langhorne, though he was summoned by appellant as a witness. The subpoena served on Langhorne was served on him as a resident of Fort Bend County to attend the trial to be held in Washington County. The subpoena was therefore void. Sapp v. King, 66 Tex. 570, 1 S.W. 466. It appears that one of appellant's counsel requested permission of the court to discuss the case with Langhorne. Langhorne informed the court that he did not desire to discuss the case with appellant or appellant's counsel. The court thereupon declined to compel Langhorne to discuss the case with his adversary or his adversary's counsel. We know of no authority in a court to require one party of a case to submit himself to questioning by his adversary except in open court or by deposition where he may have assistance of his counsel.

We have considered the remaining propositions of appellant, and find them to be of the same general character as his propositions Nos. V and VI, and hence without merit.

Appellees present two propositions for affirmance of the case. The first being that the necessary legal consequence of the trust deed was to render the deed to appellant void, as it was executed by Langhorne contrary to the provisions of the Trust deed; the second proposition being that the deed to appellant was void because based upon an illegal consideration, namely, upon the consideration that appellant, who was not an attorney, should perform services which only a licensed attorney may perform.

It is doubtless true that ordinarily one may not create a spendthrift trust, wherein he is the sole beneficiary, which he may not revoke at any time. "It is against public policy to permit a man to tie up his property in such a way that he can still enjoy it but can prevent his creditors from reaching it." 1 Scott on Trusts, § 156, p. 782. There is every reason of morals, prudence and public policy why a wealthy man should not be allowed to tie up his wealth in such a fashion that he can enjoy the position of wealth, and yet not be answerable for debts which that position would enable him to incur, or for injuries which he might inflict on others. But circumstances alter cases. A wealthy man who is sentenced to prison for life does not come into contact with the public, and is by his situation separated from his friends. It takes no great foresight on his part and on the part of his friends to foresee that his wealth and his unfortunate situation will result in efforts being made by those who have access to him to obtain his wealth. It takes no great foresight on his part to foresee that imprisonment, which is punishment, will weaken his will, and that his desire for liberty will make him credulous. We see no reason, when there is no occasion to suppose that a trust in the nature of a spendthrift trust has been created by a man in prison to protect his estate, to hold such a trust to be against public policy. In such circumstances the tying up of a prisoner's property can work no injury to the public as the prisoner is in no position to defraud trusting creditors. Under such circumstances the man creating such a trust is protecting himself, not against his own folly, but against what other men may do while he is in a position where duress may very easily cause him to part with his property under circumstances where he might be afraid to claim duress. We will not rule on the point as it is not necessary to the disposition of the case. But the fact that it is against public policy for a man at large to tie up his property for himself, seems to present no valid reason for holding that a man in prison might not, consistent with sound public policy, create a spendthrift trust for himself during the period of his imprisonment.

We also consider it unnecessary to pass upon appellees' second independent proposition.

Finding no reversible error, the judgment of the trial court ought to be affirmed, and it is so ordered.

Affirmed.