A.C. GROHN and wife, Addie Izola Grohn, Individually and as legal Representative of the Estate of A.C. Grohn, Deceased, Carl Anthony Grohn and Lawrence Owen Grohn, Appellants,

v.

Fritz MARQUARDT, Appellee.

No. 16763.

Court of Appeals of Texas, San Antonio.

July 27, 1983.

Rehearing Denied Sept. 6, 1983.

Guy P. Allison, Sr., San Antonio, for appellants.

Gordon Hollon, Boerne, for appellee.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

TIJERINA, Justice.

This is an appeal from a judgment based on a jury verdict setting aside a real estate deed by which appellee, Fritz Marquardt, conveyed a 357.27 acre ranch (the Marquardt Ranch) to appellant, Addie Grohn, and her now deceased husband, A.C. Grohn. Appellee originally brought suit naming only Addie Grohn as defendant, and judgment was rendered in favor of appellee. Appellants Carl and Lawrence Grohn, children of Mr. & Mrs. Grohn, appealed the judgment to this Court in *Grohn v. Marquardt,* 487 S.W.2d 214 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.). The appeal was dismissed, based on the finding that Carl and Lawrence were not bound by the original judgment, and thus not entitled to review by writ of error. The instant suit was filed following the dismissal of appeal.

Appellee's original petition alleges that the Grohns devised a scheme to acquire title to the Marquardt Ranch without paying value for it. The petition states that because of fraudulent misrepresentations made by the Grohns, appellee agreed to convey the Marquardt Ranch to the Grohns, supply all livestock for ranching, and devote his time to conducting the ranching operations. In return the Grohns were to pay all outstanding indebtedness and taxes on the ranch, make various improvements to the ranch, convey a life estate to appellee, and permit appellee to retain seventy-five (75%) percent of the ranching profits. The petition alleges that appellee conveyed the ranch to the Grohns in reliance on these fraudulant misrepresentations, but that the Grohns failed to comply with their agreement. In addition, the petition alleges that appellant Addie Grohn, "by artful conduct, blandishments, and false and fraudulent pretenses", exerted such great influence upon appellee that his free will was destroyed, and that he was thus acting under the undue influence of Mrs. Grohn when he executed the deed in question.

The evidence establishes that prior to the 1962 hunting season, a close personal relationship developed between appellee and Mrs. Grohn. Various witnesses described this relationship as more than a mere friendship. Indeed, the undisputed evidence indicates that beginning on May 9, 1963, and continuing until April, 1966, appellee and Mrs. Grohn engaged in sexual relations. During this time appellee and

Mrs. Grohn expressed love for each other, and there is some evidence that they contemplated marriage if Mrs. Grohn ever became free to marry. Appellee testified that he loved Mr. Grohn as a brother, and that prior to his relationship with Mrs. Grohn he had never dated or been sexually intimate with anyone. Appellee claimed that Mrs. Grohn initiated their sexual relationship, while Mrs. Grohn claimed that appellee was the first to profess love. Mrs. Grohn testified that she and her late husband developed deep love for appellee, which is why they took such a great interest in him. Mutual acquaintances of the parties testified that the Grohns did seem to take a great interest in appellee and that they assisted him in "cleaning up" the ranch. Some of these acquaintances also testified that the Grohns expressed a desire to own some Hill County property, and that Mr. Grohn at one time stated his intention to some day build a home on a bluff located on the Marquardt Ranch. Throughout this period of friendship the Grohns helped appellee on his ranch and advised him on business matters. There is evidence that Mrs. Grohn made frequent over-night trips to the ranch to help appellee with the ranching operations. Although many of these trips were made with her husband's consent and approval, there is no direct evidence that Mr. Grohn was aware of the sexual intimacies shared by appellee and Mrs. Grohn.

The evidence indicates that appellee's relationship with the Grohns developed to the exclusion of other relationships with his long-standing friends in the local community. On July 20, 1965, appellee changed his will and named the Grohns as the principal beneficiaries of his estate, including the Marquardt Ranch. On the same date, appellee obtained a life insurance policy naming the Grohns as beneficiaries. Both the will and the insurance policy were delivered to the Grohns by appellee. Appellee deeded the Marquardt Ranch to the Grohns on December 3, 1965. Appellee testified that he conveyed the ranch to the Grohns to show his love for them. Although there is evidence that appellee told the Grohns they could do whatever they wanted with the ranch, there is also evidence that appellee conveyed the ranch to the Grohns pursuant to the terms of the representations outlined above. Mrs. Grohn testified that prior to the execution of the deed by appellee, there were no discussions between the parties about the conveyance. The record indicates, however, that the deed was drawn up by the Grohn's personal attorney, and that Mr. Grohn paid the legal fee for the deed preparation. The record further indicates that a joint will executed by the Grohns on February 28, 1966, and thereafter delivered to appellee, made dispositions of property to appellee substantially in compliance with the above-mentioned representations. The February will was revoked twelve days later on March 12, 1966, when the Grohns executed a new will which failed to provide for appellee. Appellee remained unaware of the new will until January, 1969.

Appellee testified that shortly after he conveyed the ranch to the Grohns their relationship with him seemed to change. The Grohn's visits to the ranch became less frequent, they took steps to terminate relationships with appellee's friends, and the sexual relationship between Mrs. Grohn and appellee ended several months after the conveyance. Mr. Grohn died on February 17, 1967, and thereafter virtually all contact between Mrs. Grohn and appellee ended. Appellee initially filed suit in October, 1968, seeking to set aside the deed by which he conveyed the ranch to the Grohns.

Appellants complain through points of error one, two, three and four that the trial court erroneously denied their motions for instructed verdict and motion for judgment *non obstante verdicto*, and that the court erroneously granted appellee equitable relief. Appellants' motions for instructed verdict allege that appellee's immoral conduct was contrary to public policy and bars him from equitable relief. The jury's verdict was based on special issues finding that the deed to appellants was made as a result of fraud and undue influence.

The "unclean" hands doctrine relied upon by appellants requires that one who comes into equity must come with "clean hands." *Munzenrieder & Associates, Inc. v. Daigle,* 525 S.W.2d 288, 291 (Tex.Civ. App.—Beaumont 1975, no writ). This maxim means that a court acting in equity will refuse to grant relief to a plaintiff who has been guilty of unlawful or inequitable conduct with regard to the issue in dispute. *See* 30 C.J.S. *Equity* § 93 (1965). The determination of whether a party has come to court with unclean hands is left to the discretion of the trial court. *Hand v. State,* 335 S.W.2d 410, 419 (Tex.Civ.App.—Houston), *writ refused n.r.e. per curiam,* 160 Tex. 416, 337 S.W.2d 798 (1960). The doctrine cannot be used as a defense if the unlawful or inequitable conduct of the plaintiff is merely collateral to the plaintiff's cause of action. *See* 27 AM.JUR.2d *Equity* § 143 (1966). In order to justify application of the doctrine the defendant must show injury suffered as a result of the plaintiff's conduct. *See Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410 (1960). Further, if the party seeking relief is not a free moral agent and the party's consent to the transaction in dispute is obtained through duress or undue influence, the clean hands doctrine will not be used to deny equitable relief to set the transaction aside. 27 AM JUR.2d *Equity* § 141 (1966). Because his cause of action is based on fraud and undue influence, appellee contends the unclean hands doctrine is inapplicable to the instant case.

In order to cancel a deed on the grounds of fraud, three things must occur: (1) false representations of a material fact must be made; (2) the party being deceived must believe the representations to be true; and (3) the deceived party must rely upon the representations. *Booth v. Chadwick,* 154 S.W.2d 268, 272 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.). Undue influence, which also may be asserted as a basis for cancelling a deed or challenging a will, is defined as "such influence or dominion as exercised at the time, under the facts and circumstances of the case, which destroys the free agency of the testator, and substitutes in the place thereof the will of another." *Long v. Long,* 133 Tex. 96, 125 S.W.2d 1034, 1035 (1939). Undue influence is usually proved by circumstantial evidence, and even though none of the circumstances standing alone would be sufficient to show such influence, if when considered together they produce a reasonable belief that undue influence was exerted, they are sufficient to sustain such a conclusion. *See Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963); *Hassell v. Pruner,* 286 S.W.2d 266, 269 (Tex. Civ.App.—Amarillo 1956, writ ref'd n.r.e.). Undue influence may be exercised through fear, threats, deception or some other means of persuasion over the person being so influenced. Such influence may be exerted immediately prior to the execution of the instrument in question, or it may have been consistently and successfully exercised over a long period of time. *Hassell v. Pruner, supra* at 274.

The evidence is undisputed that appellant Addie Grohn was a married woman and that appellee and Mrs. Grohn engaged in sexual relations and professed love for each other. At trial appellee admitted that his decision to convey his ranch to the Grohns was influenced by his sexual relationship with Mrs. Grohn. His testimony does not indicate, however, that he considered Mrs. Grohn's sexual favors to be the *quid pro quo* for his conveyance of the ranch. Rather, the evidence indicates that appellee considered the Grohns to be close and trustworthy friends, and that the conveyance of the ranch was made in expectation of various benefits, including the expectation of a life estate in favor of appellee.

Under the facts presented, we find that the pleadings were sufficient to present the issues which were submitted to the jury, and that the evidence was sufficient to support the jury's answers. We therefore hold that the trial court did not err in denying appellants' motions for instructed verdict and for judgment notwithstanding the verdict. *See Bell v. Kins,* 428 S.W.2d 158, 162 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). Since we have

held that the facts are sufficient to support appellee's claims of fraud and undue influence, we believe the trial court properly refused to apply the clean hands doctrine. Appellant's points of error one through four are overruled.

██ In the fifth, sixth and ninth points of error, appellants contend the court committed error in overruling objections and exceptions to the court's charge, and in denying a special requested charge, all on the issue of fraud. The specific court charge on the fraud issue is as follows:

[T]he term 'fraud' as used herein exists where one makes a *false representation* of a *material fact, knowing it to be false*, or of his own knowledge, when he does not know whether it is true or false, with intention to induce the person to whom it is made, in reliance upon it, to do or to refrain from doing something to his pecuniary hurt, when such person, acting with reasonable prudence, is thereby deceived and induced so to do or refrain to his damage. [Emphasis added.]

We believe that the trial court properly charged the jury on the material elements of fraud as alleged by appellee. Although the manner of submission to jury was not exactly that sought by appellants, it was a fair submission of the theory of recovery, and the trial court's failure to submit the issue as requested by appellants was not error. *See Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc.,* 621 S.W.2d 200, 203 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). In *Gilson v. Universal Realty Co.,* 378 S.W.2d 115, 119 (Tex.Civ. App.—Houston 1964, writ ref'd n.r.e.), the court held there was no error in refusing a requested explanatory instruction since the substance of the matter contained therein was included in the court's charge. Thus in accordance with *Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc., Gilson v. Universal Realty Co.,* and *Booth v. Chadwick, supra,* we hold that the fraud issue was properly submitted, as special issues, in the trial court's charge to the jury. The fifth, sixth and ninth points of error are overruled.

██ The seventh point of error concerns an objection and exception to the court's charge on special issue number seven. This issue inquired whether the Grohns represented to appellee that they would procure a loan for the purpose of making improvements to appellee's existing residence. Appellants contend the trial court erroneously omitted from special issue number seven the statement: "using said ranch as and for collateral for said loan," as pleaded in plaintiff's original petition. A trial court is not required, in a special issue, to follow the exact language of the pleading. *See Southern Steel Co. v. Manning,* 513 S.W.2d 273, 276 (Tex.Civ.App.—Waco 1974, no writ); Tex.R.Civ.P. 279. Point of error number seven is overruled.

██ The eighth point of error concerns appellants' objections to the submission of a special issue with reference to representations made to appellee that he would be given a life estate if he conveyed the property to the Grohns. If there is some evidence raising an issue, the trial court is required to submit the issue even though the evidence may be insufficient to support an affirmative answer. *Wenzel v. Rollins Motor Co.,* 598 S.W.2d 895, 902 (Tex. Civ.App.—El Paso 1980, writ ref'd n.r.e.). *See also Kentucky Central Life Insurance Co. v. Fannin,* 575 S.W.2d 76, 80 (Tex.Civ. App.—Amarillo 1978, no writ). In the instant case appellee testified that the Grohns had promised to give him a life estate if he deeded the property to them. Fraud is one of the classic exceptions to the parol evidence rule, and when fraud is alleged in the procurement of a written instrument, parol evidence is admissible to contradict or vary the instrument. *See Anderson v. Havins,* 595 S.W.2d 147, 153 (Tex.Civ.App.—Amarillo 1980, no writ). Appellants' contention that the issue regarding a life estate should not have been submitted because appellee was the only witness to testify on the subject, is without merit. Point of error number eight is overruled.

██ Points of error ten and fifteen are briefed and argued jointly. Appellants contend that the court committed error in

overruling appellants' amended motion for a new trial because the verdict and judgment were not supported by the law and evidence. Discretion of the trial court to grant or deny a new trial should not be disturbed on appeal except for manifest abuse of discretion. *Napier v. Napier,* 555 S.W.2d 186, 188–89 (Tex.Civ.App.—El Paso 1977, no writ). In light of our holding under points of error one through four, we hold that the trial court did not abuse its discretion in denying appellants' motion. Points of error ten and fifteen are overruled.

■ The eleventh point of error concerns the testimony of Robert Rentz, a real estate broker, as to the market value of the Marquardt Ranch at the time of the trial. The specific complaint is that the testimony as to market value at the time of trial was too remote and inadmissible. Appellants cite *Reed v. Southern Pacific Co.,* 99 S.W.2d 1026 (Tex.Civ.App.—Austin 1936, writ dism'd), in support of their contention. Although the *Reed* case does not concern market value of real estate, we note that the court held that a variance in the testimony as to value would be a matter going to the weight rather than to the admissibility of the testimony offered. *Id.* at 1029. In *Board of Regents of the University of Texas System v. Puett,* 519 S.W.2d 667, 672–73 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.), the court held that whether a sale offered as comparable is too remote in time to be admissible is left largely to the discretion of the trial court. The question as to the admissibility of the expert's testimony was within the discretion of the trial court, and that discretion was not abused. *See Holcombe v. City of Houston,* 351 S.W.2d 69, 73 (Tex.Civ.App.—Houston 1961, no writ). Since there is no showing of an abuse of discretion, point of error eleven is overruled.

■ Points of error twelve and thirteen relate to the admissibility of testimony, over appellants' objection, regarding appellee's general reputation for truth and veracity. Appellants cite *Twin City Fire Insurance Co. v. Gibson,* 488 S.W.2d 565 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.) in support of their contention that general reputation for truth and veracity should only be admitted when the witness has been impeached. In the instant case, the record reflects that appellants attacked the character and reputation of appellee because he engaged in illegal and immoral sexual acts with Mrs. Grohn, and further accused appellee of lying to his sister about the property transferred. It also appears that the prior testimony of A.P. Smith, deceased, was read to the jury with appellants' consent. Smith's testimony was with reference to appellee's general reputation for truth and veracity and was essentially the same as the testimony of other witnesses about which appellants now complain. Objections to evidence are unavailable when similar evidence to the same effect is offered and received without objection. *Hundere v. Tracy & Cook,* 494 S.W.2d 257, 264 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). The court in *Twin City Fire Insurance Co. v. Gibson, supra,* found the admissibility of the questioned reputation evidence to be harmless error. Error in admitting or excluding testimony will be reversed only if there is a reasonable belief that the admission or exclusion of such evidence may have caused the rendition of an improper judgment or caused the jury to render a different verdict. *See* Tex.R. Civ.P. 434. Having reviewed the record, we find no reasonable basis to conclude that the exclusion of the questioned reputation testimony would have produced a different result. The error, if any, is harmless. Points of error twelve and thirteen are overruled.

■ The fourteenth point complains of court error in overruling appellants' objection to oral testimony of appellee regarding a life estate. Appellants' principle contention in this regard is that parol evidence is not admissible to contradict the terms of the deed of conveyance in question. As previously noted, the established rule provides that fraud is an exception to the parol evidence rule. *See American Imagination Corp. of Texas v. W.R. Pierce & Associates,*

*Inc.,* 601 S.W.2d 147, 148 (Tex.Civ.App.—El Paso 1980, no writ); *Anderson v. Havins, supra.* We conclude that appellee's testimony regarding the life estate issue was properly admitted. The fourteenth point of error is overruled.

The judgment is affirmed.

CADENA, Chief Justice.

I agree that the judgment below must be affirmed. Appellant does.not challenge the jury finding that appellee, at the time he executed the deed in question, was acting in response to undue influence.